**John DOE, Plaintiff,**

v.

**Larry GONZALEZ and David Bludworth, Defendants.**

No. 85–8452–CIV.

United States District Court, S.D. Florida.

May 31, 1988.

James K. Green, West Palm Beach, Fla., for plaintiff.

Shirley A. Walker, George L. Waas, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## FINAL SUMMARY JUDGMENT

ROETTGER, District Judge.

The legal issue for determination by the Court in the instant case is whether Section 112.317(6), Florida Statutes, is unconstitutional on its face or as applied to Plaintiff. Section 112.317(6) of the Florida Statutes provides in pertinent part:

Any person who willfully discloses, or permits to be disclosed, his intention to file a complaint, the existence or contents of a complaint which has been filed with the Commission, or any document, action or proceeding in connection with a confidential preliminary investigation of the Commission, before such complaint, document, action, or proceeding becomes a public record as provided herein is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Florida Statute § 112.317(6).

The stipulated facts of this case are as follows. Defendant, BONNIE WILLIAMS,[1] is Executive Director of the Florida Commission on Ethics, and as such is responsible for enforcing the provisions of Chapter 112, Florida Statutes. Defendant, DAVID BLUDWORTH, is State Attorney for the Fifteenth Judicial Circuit of the State of Florida and as such is responsible for prosecuting violations of criminal laws occurring in Palm Beach County.

On July 3, 1985 and July 14, 1986, the Palm Beach Post, a local newspaper, reviewed public records and reported the names of over two hundred elected and public officials who had failed to file financial disclosure statements for the year 1984 as required by Section 112.3145, Florida Statutes.

Plaintiff intends to file or has filed complaints with the Florida Commission on Ethics against elected and public officials who failed to file financial disclosure statements for the years 1984 and 1985. Plaintiff desires to speak and publish articles about those complaints, but cannot do so out of fear of prosecution for violating Section 112.317(6) of the Florida Statutes.

Defendant, DAVID BLUDWORTH, through one of his assistants, has publicly announced that his office may prosecute individuals who violate Section 112.317(6) of the Florida Statutes. In addition, Defendant BLUDWORTH has refused to state that he will not prosecute Plaintiff in particular.[2] Finally, Defendant GONZALEZ sent Plaintiff a copy of a letter, which notifies complainants about the contents of the challenged statute, and advises complainants that they would be subject to arrest for disclosing complaints in violation of the statute.

Before this Court may consider the constitutional issue presented by the case at bar, this Court must undertake a threshold inquiry as to whether there exists in this case a sufficient case or controversy to confer jurisdiction. Article III of the Constitution imposes limitations on the cases that federal courts may hear. These limitations include the requirement, broadly described as the justiciability doctrine, that there be a case or controversy.

As was noted by the Supreme Court in *Babbitt v. Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the "difference between an abstract question and a 'case or controversy' is one of degree ... and is not discernible by any precise test. The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." 442 U.S. at 297–98, 99 S.Ct. at 2308 (citations omitted).

Plaintiff has not been prosecuted or directly threatened with prosecution under the challenged statute. This Court must, therefore, determine whether JOHN DOE is an appropriate plaintiff. When contesting the constitutionality of a criminal statute, "it is not necessary that [plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

With respect to the case at bar, defendant has publicly announced that it may prosecute individuals who violate Florida

---

**1.** At the time that this action was commenced, Larry Gonzalez was the Executive Director of the Florida Commission on Ethics. Accordingly, Mr. Gonzalez is named as a Defendant in Plaintiff's complaint. On March 23, 1988, however, this Court received a notice, substituting Bonnie Williams, the current Executive Director of the Florida Commission on Ethics, for Larry Gonzalez.

**2.** This Court has permitted Plaintiff to proceed in the above-entitled action under a fictitious name due to the fact that Plaintiff in this case has admitted his intent to engage in illegal conduct.

Statute § 112.317(6). "Moreover, the State has not disavowed any intention of invoking the criminal penalty provision ..." of the statute against this plaintiff. *Babbitt v. United Farm National Union*, 442 U.S. 289, 302, 99 S.Ct. 2301, 2310–11, 60 L.Ed.2d 895 (1979), and the State of Florida has been vigorously defending the constitutionality of the statute at issue in this litigation.

■ Accordingly, this Court concludes that the fears of prosecution alleged by plaintiff in the instant case are not "imaginary or speculative" and that, therefore, this Court has jurisdiction over the controversy. As was noted by the Eleventh Circuit Court of Appeals, plaintiff "should not be required to expose [himself] to prosecution to secure the desired relief so long as [he has] 'alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder ...' " *Athens Lumber Co., Inc. v. Federal Election Commission*, 689 F.2d 1006 (11th Cir.1982), *aff'd on rehearing en banc*, 718 F.2d 363 (1983), *cert. denied*, 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984).

In the case before the Court, Plaintiff JOHN DOE, has alleged in a precise manner that, but for the sanctions of the statute that he seeks to challenge, he would engage in the very acts that would trigger the enforcement of the statute. *See, Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Article III of the Constitution requires no more.

Proceeding, therefore, to the merits of the constitutional challenge, this Court finds as follows.

The case at bar is very similar to a case wherein the Supreme Court held that a criminal sanction imposed for the truthful reporting of confidential government investigations encroached upon freedom of speech and the press. See, *Landmark Communications, Inc. v. Commonwealth of Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978).

In *Landmark*, a Virginia newspaper published an accurate article about a pending state judicial inquiry, identifying the judge whose conduct was being investigated. The newspaper was fined $500.00 pursuant to a Virginia statute which made judicial inquiries confidential and further provided: "Any person who shall divulge information in violation of the provisions of this section shall be guilty of a misdemeanor."

The Supreme Court reversed the conviction and explained that the interests advanced by the State of Virginia were insufficient to justify the actual and potential infringements on the First Amendment. 435 U.S. at 838, 98 S.Ct. at 1541. The Court in *Landmark* concluded that "the publication Virginia seeks to punish under its statute lies near the core of the First Amendment, and the Commonwealth interests advanced by the imposition of criminal sanctions are insufficient to justify the actual and potential encroachments on freedom of speech and of the press which follow therefrom." *Id.* at 838, 98 S.Ct. at 1541.

Defendants concede that based upon the teachings of *Landmark Communications, Inc.*, the application of this statute to a newspaper which published lawfully obtained, truthful information would be a violation of the First Amendment and, therefore, unconstitutional. Defendants argue, however, that the instant case is distinguishable from the situation considered by the Supreme Court in Landmark because in the instant case the publication by a *participant* in the proceedings of truthful information is at issue.

This Court initially notes that the statute at issue in the instant case not only applies to persons lodging complaints, but also to members of the news media. Accordingly, this statute, as drafted, risks chilling free speech and is, therefore, subject to attack as facially unconstitutional. *Secretary of Maryland v. Munson*, 467 U.S. 947, 968, 104 S.Ct. 2839, 2853, 81 L.Ed.2d 786 (1984). In addition, where, as here, a statute unquestionably attaches sanctions to protected speech, the likelihood of deterring protected speech is ordinarily sufficient to jus-

tify an overbreadth attack even in the absence of a prosecution. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217, 95 S.Ct. 2268, 2276–77, 45 L.Ed.2d 125 (1975).

The Supreme Court in *Landmark* did, however, indicate that their decision might have been differently focused if "participants" in the Commission investigation process had been litigants there. The Court in *Landmark* noted that they did not have before them in the *Landmark* case "any constitutional challenge to a State's power to keep the Commission's proceedings confidential or to punish participants for breach of this mandate." *Id.* 435 U.S. at 837, 98 S.Ct. at 1540–41, *see also*, n. 9, at p. 837, 98 S.Ct. n. 9, at p. 1540–41.

The instant case, therefore, presents a constitutional issue of first impression. This Court must, therefore, consider the interests asserted by defendants in support of the legislation pursuant to the standards set forth in *Landmark* and other precedent.

In cases presenting First Amendment challenges, the courts "must be less deferential to state interests. Any prior restraint on expression comes to the court with a presumption of unconstitutionality." *First Amendment Coalition v. Judicial Inquiry and Review*, 784 F.2d 467, 477 (3d Cir.1986). In addition, where sufficiently high interests in support of the statute are presented, the State must still demonstrate that its punitive action is necessary to further the state interest asserted. *Landmark Communications v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). And, to the extent that defendants characterize this statute as a "time, place, and manner restriction," the statute must fall if there are less drastic alternatives. *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

Defendants argue that various state interests asserted in support of the statute are sufficient to sustain its constitutionali-ty. The governmental interests presented by defendants are as follows:

a) to prevent a complainant who might have self-serving motives from publicly discussing a particular complaint that may be unfounded until a preliminary investigation has been completed;

b) to minimize the risk of injury to the reputation of a public official caused by any adverse publicity from unfounded complaints;

c) to maintain the public's confidence in its elected officials by preventing the premature disclosure of a complaint that may be ultimately proved unfounded;

d) to protect the complainants and witnesses from possible recrimination;

e) to facilitate the investigation of the complaint;

f) to prevent the potential use of a state agency to help injure the reputation of another person.

*See*, Defendants' Responses to Plaintiff's Interrogatory No. 3, attached to Plaintiff's Motion for Summary Judgment.

■ With respect to the first interest asserted by defendants, this court initially notes that in the case at bar, there are no allegations that the complainant is acting due to self-serving motives or that the complaints that plaintiff, JOHN DOE, has filed, or intends to file, are unfounded.[3] In addition, this court concludes that a prior restraint on speech cannot be justified because such speech *might* be "self-serving" or "unfounded."

Regarding the second and third interests offered in support of the statute by defendants, to minimize the risk of injury to officials caused by unfounded complaints and to maintain the public's confidence in officials by preventing premature disclosure of unfounded complaints, the court concludes that these are the principal interests which the statute at issue is designed to serve. As was noted by the Supreme Court of Florida in *Tribune Co. v. Huffs-*

---

**3.** The information which formed the basis of the public ethics complaints filed by plaintiff was obtained from public records located at the office of the Supervisor of Elections for Palm Beach County. Plaintiff transmitted that information in the form of public ethics complaints to defendant Gonzalez. Defendants do not dispute the truthfulness of that information.

*tetler,* 489 So.2d 722 (Fla.1986), "the principal interests which Section 112.317 § 6) furthers amounts to a private interest in reputation." *Id.* at 724.[4]

The second and third interests asserted by defendants are, however, the very interests that were found insufficient by the Supreme Court in the *Landmark* case. Although the Supreme Court acknowledged that Virginia had "an interest in protecting the good repute of its judges like that of all public officials," the Court concluded that "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free." 435 U.S. at 841, 98 S.Ct. at 1543 (citing *New York Times Co. v. Sullivan,* 376 U.S. 254 at 272–73, 84 S.Ct. 710, 721–22, 11 L.Ed.2d 686 (1964)). The Court explained that the operation of the judicial inquiry commission was a matter of public interest and that the newspaper's accurate article about a legislatively authorized inquiry served that public interest.

Defendants have provided absolutely no reason why these governmental interests are more sufficient in the present context than they were in the *Landmark* case. Although defendants seem inordinately concerned that false complaints may be filed and revealed to the public, this Court notes that the State of Florida could easily punish false complaints in much the same way that it punishes perjury or the filing of false reports of crime. *See,* Sections 837.-02 and 817.49, Florida Statutes. *See, e.g., Acorn v. City of Frontenac,* 714 F.2d 813, 819 (8th Cir.1983).[5] As to any potential malicious coercion of public officials by complainants, the State of Florida can treat any such situations in the same manner that extortion and blackmail are contended with.

The fourth governmental interest asserted by Defendants in support of the nondis-closure statute is "to protect the complainants and witnesses from possible recrimination." In the case before the Court, however, the complainant, who desires voluntarily to speak, is himself seeking to waive any protection. In addition, with respect to the case at bar, the claims of the complainant are such that there will be no witnesses to protect. Finally, protection of complainants could be advanced by the less drastic means of permitting confidentiality, not by requiring it.

Regarding the fifth interest, that of facilitating the investigation of the complaint, defendants fail to indicate in what manner such investigations would be hampered by disclosure of complaints. This Court notes that when the government seeks to justify legislation which substantially limits First Amendment rights, it "must produce more than a few conclusory affidavits ... which primarily contain unsubstantiated opinions and allegations." *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir.1986). In addition, although the Court in *Landmark* determined that "the confidentiality requirement can be said to facilitate the work of the commissions in several practical respects," the Court concluded the governmental interests asserted were insufficient to justify the encroachments on freedom of speech and of the press. *Id.* 435 U.S. at 835, 98 S.Ct. at 1539–40.

The final interest said to be advanced by the nondisclosure statute is that of preventing the use of a state agency to help injure the reputation of another person. This interest may also be served less drastically by providing punishment or civil remedies for the abuse of process or defamation or criminal penalties for false report or perjury.

---

4. The Supreme Court of Florida found the challenging party in *Huffstetler* to be without standing to contest the statute's constitutionality. However, in *State v. Collins,* 3 Fla.Supp.2d 15 (2d Jud.Cir.1983), the circuit court sitting in its appellate capacity ruled § 112.317(6), Florida Statutes, is constitutional as applied to participants to the proceedings and does not violate the First Amendment.

5. In *Acorn,* a municipal ordinance restricting door-to-door solicitation was held restrictive of First Amendment freedoms. The court explained that the City's interest in protecting its residents from crime could be served by prosecuting solicitors for trespass, burglary, fraud or any other offense. 714 F.2d at 819.

In sum, the truth in the case of a frivolous complaint or a complaint filed for political purposes is that the complainant is abusing the process. Section 112.317(6) prevents the public from knowing about such abuses as well as preventing the public from knowing about meritorious complaints in a timely manner. It is incumbent upon the State of Florida to handle, and if desired, to punish abuse of its processes in a manner other than by prohibiting the public from knowing about and discussing those abuses.

■ An analysis of the governmental interests said to be advanced by the legislation at issue in the instant case clearly indicates that such interests are insufficient to justify the restrictions on First Amendment freedoms interposed by the legislation. The interests asserted by defendants herein are no more compelling than those asserted in *Landmark*, and the criminal sanctions imposed by Section 112.-317(6) are not justified thereby. As in the *Landmark* case, the "type of 'danger' evidenced by the record is precisely one of the types of activity envisioned by the Founders in presenting the First Amendment for ratification." 435 U.S. at 845, 98 S.Ct. at 1545 (citing *Wood v. Georgia*, 370 U.S. 375, 388, 82 S.Ct. 1364, 1371–72, 8 L.Ed.2d 569 (1962)). This society's foundation of self-governance requires that the speech prohibited by the Florida statute be not only tolerated, but encouraged.

Accordingly, it is

ORDERED AND ADJUDGED that Section 112.317(6), Florida Statutes, is hereby declared unconstitutional on its face as a matter of law and unconstitutional as applied to plaintiff. Plaintiff's motion for summary judgment is, therefore, GRANTED.

FURTHER ORDERED that defendants are hereby permanently enjoined from enforcing Section 112.317(6), Florida Statutes.

FURTHER ORDERED that plaintiff's claim for damages is DENIED. The Court notes that plaintiff's claim for damages was dismissed in open court on December 5, 1986.[6]

DONE AND ORDERED.

---

**6.** *See*, minutes of hearing on motion to dismiss, docket number 28; plaintiff's memorandum in opposition to motion to dismiss, docket number 9, wherein plaintiff argues that defendants' motion to dismiss should be denied as to injunctive and declaratory relief.