John DOE, Plaintiff,

v.

The SUPREME COURT OF FLORIDA and the Florida Bar, Defendants.

No. 88–8477–CIV.

United States District Court, S.D. Florida.

March 13, 1990.

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., for plaintiff.

George L. Waas, Dept. of Legal Affairs, and Barry Richard, Roberts, Baggett, Laface & Richard, Tallahassee, Fla., for defendants.

## AMENDED FINAL ORDER OF SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE has come before the Court upon the parties' cross-motions for summary judgment. At issue today is the constitutionality of Florida Bar Rule 3–7.1 insofar as it prohibits complainants from disclosing information regarding Bar disciplinary proceedings.[1] The Rule was triggered in this case when John Doe filed a complaint with the Florida Bar against his former lawyer, alleging deceit and fraud. Doe's complaint was well founded, according to the Bar, and a private reprimand was issued against the lawyer. The Bar advised Plaintiff, however, that the complaint, even though truthful, was confidential and that any violation of confidentiality would be punished by contempt. This lawsuit ensued as a result of Plaintiff's claim that the Bar's confidentiality Rule violates the free speech clause of the First Amendment of the Constitution. The Defendants, The Supreme Court of Florida and the Florida Bar, contend that confidentiality provisions of Rule 3–7.1 as they relate to disclosure of information by complainants in disciplinary proceedings constitutes no more than a valid time, place, and manner restriction on speech and is, therefore, altogether consonant with the command of the

---

1. We have been called upon to rule as to the constitutionality of Rule 3–7.1 *only* insofar as it prohibits a participant/complainant from disclosing information involving disciplinary proceedings. Our ruling is intended to invalidate and enjoin *only* that portion of Rule 3–7.1 which purports to gag a participant/complainant from disclosing information concerning the disciplinary proceeding.

First Amendment. As the parties do not dispute the material facts, this cause is ripe for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.

The following facts have been stipulated to by the parties:

1. Plaintiff, JOHN DOE, is a citizen of Palm Beach County, Florida.

2. Defendant, THE SUPREME COURT OF FLORIDA, is the highest state judicial authority in the State of Florida and is responsible for the promulgation and enforcement of Rule 3–7.1.

3. Defendant, THE FLORIDA BAR, is responsible for prosecuting violations of the rules regulating the Florida Bar.

4. In early February 1987, Plaintiff filed a complaint against a member of the Florida Bar.

5. Rule 3–7.1 of the Rules regulating the Florida Bar provides in pertinent part:

All matters including files, preliminary investigation reports, inter-office memoranda, records of investigations, and the records in trials and other proceedings under these rules, excepting only those matters in connection with proceedings initiated in circuit court, are all property of the Florida Bar. All of such matters having to do with ... (2) resignations pending disciplinary proceedings shall be confidential to all parties participating therein or having knowledge thereof except as otherwise provided in these rules. All persons shall be admonished by the agency before whom they appear to observe the confidential nature of such proceedings.

6. On six or more occasions, beginning on February 10, 1987, Plaintiff received communications from the Florida Bar that ended with the following admonishment:

Dear Complainant:

The grievance you filed must be treated in a confidential manner, as it is a violation of the rules of The Supreme Court of Florida to reveal this information to any unauthorized person. However, you are authorized to discuss your grievance with your attorney.

Plaintiff was further advised that any breach of confidentiality could result in his being held in contempt of court.

7. The Florida Bar determined that the Plaintiff's complaint was meritorious, and that the attorney in question had indeed violated the Code of Professional Responsibility.

8. Plaintiff desires to speak and publish articles about his complaints but cannot do so out of fear of prosecution for violating Rule 3–7.1 and the admonishment referred to in paragraph 5.

9. Defendants have publicly announced that they may prosecute for contempt individuals who violate Rule 3–7.1.

10. The Bar contends that confidentiality of disciplinary proceedings serves four interests:

A. Confidentiality and immunity encourage the filing of complaints and the cooperation of witnesses;

B. Confidentiality, until the time of a finding of probable cause, protects lawyers from the injuries that would result from the public filing of frivolous complaints and the knowledge of the public that such complaints are being investigated by the Bar;

C. Confidentiality avoids the loss of confidence in the Bar that might be caused by publication of frivolous claims; and

D. Confidentiality facilitates the Bar's investigation of a complaint.

11. There are currently about 44,175 members of the Florida Bar.

12. Between July 1, 1987 and June 30, 1988, the Florida Bar received 6,919 complaints against lawyers.

13. During that same period, there were some 280 disciplinary actions, ranging from disbarment to suspension to private reprimand. Some 4% of all complaints result in discipline and private reprimands constitute more than 40% of all disciplinary actions.

984

## II.

■ The constitutional protections of free speech and press were fashioned to assure the unfettered interchange of ideas for bringing about political and social changes desired by the people. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). "All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion"—fall within the full protection of the First Amendment. *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). Although freedom of speech is not absolute, legislation that aims at penalizing the publication of truthful information can seldom satisfy constitutional standards, *Smith v. Butterworth*, 866 F.2d 1318, 1320 (11th Cir.1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 46, 107 L.Ed.2d 16 (1989), and is generally presumed unconstitutional. Additionally, legislation which acts as a prior restraint on expression must be evaluated with a particularly heavy presumption of unconstitutionality. *See Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971). To sustain the validity of a regulation that penalizes the publication of truthful information—whether in the form of a prior restraint or a penal sanction imposed to prohibit or punish speech—the state must establish sufficiently compelling interests. *Cate v. Oldham*, 707 F.2d 1176, 1186 (11th Cir.1983). And the burden squarely rests with the government to show the existence of such compelling interests. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978). Moreover, even where a governmental entity can establish that a challenged regulation's purpose is legitimate and substantial, the state must also show that that purpose cannot be achieved by means more narrowly tailored to accomplish the ends. *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); *see also Smith v. Butterworth, supra* at 1320.

■ While the Supreme Court has long held that regulations enacted for the purpose of restraining speech on the basis of content are presumptively violative of the First Amendment, *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986), content-neutral time, place, and manner restrictions may be valid provided that they are justified without reference to the content of the regulated speech, are narrowly tailored to serve a compelling governmental interest, and leave open ample alternative channels for communication of the information. *See, e.g., Renton, supra* at 47, 106 S.Ct. at 928; *Clark v. Community for Creative Nonviolence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

In the instant case, Plaintiff argues that Rule 3–7.1 places an absolute and unjustifiable burden on free speech. On the other hand, Defendants contend that Rule 3–7.1's confidentiality provision constitutes a valid time, place, and manner restriction. Moreover, Defendants have offered four interests which they claim are sufficiently compelling to justify an admittedly substantial infringement on free speech.

■ At the outset, Defendants cite *Renton* and *Clark, supra*, to support their contention that the subject confidentiality provision amounts to no more than a valid time, place, and manner restriction. We disagree. Both *Renton* and *Clark* involved regulations justified by compelling state interests that were found to be *content-neutral*. In *Renton*, a challenged city ordinance prohibiting adult motion picture theatres from locating *within* 1000 feet of any residential zone was upheld as a valid, content-neutral, time, place, and manner restriction because the Court found, among other things, that the ordinance was predominantly concerned, not with the content of adult films themselves, but with the secondary effects of adult theatres on the surrounding community. Likewise, in *Clark*, the Court upheld a National Park Service regulation permitting camping only

in designated campgrounds—which had been challenged on First Amendment grounds—because the regulation was neutral as to content and because the regulation left open ample alternative avenues of expression. Thus, both *Renton* and *Clark* involved situations where the regulation in question encroached upon First Amendment freedoms in a content-neutral manner. Here, however, the confidentiality provision is aimed directly at the content of claimant's speech. Bar Rule 3–7.1 forbids claimants who file disciplinary complaints with the Florida Bar from speaking or publishing about the nature of a pending or past claim. The Rule, as evidenced by its purported justifications, is intended to restrain speech based upon content. As the Supreme Court observed in *Young v. American Mini Theatres, supra* at 63–64, 96 S.Ct. at 2449:

> Nor may speech be curtailed because it invites dispute, creates dissatisfaction with conditions the way they are, or even stirs people to anger. The sovereign's agreement or disagreement with the content of what a speaker has to say may not affect the regulation of the time, place, or manner of presenting the speech. (Footnote omitted)

Moreover, once a claimant files a disciplinary claim with the Florida Bar, the claimant may be forever forbidden from speaking or publishing about such a claim, regardless of the time, place, or manner of such publication, even after the complaint is no longer pending. Thus, the restraint imposed by Rule 3–7.1 is not merely a restriction on speech, limited in time or matter, but rather amounts to an absolute bar, providing no alternative avenues of expression. Accordingly, Rule 3–7.1's confidentiality provision, which absolutely bars certain speech, cannot simply be characterized as a time, place, and manner restriction.

■ The Florida Bar, however, has offered four principal justifications for Rule 3–7.1. We will address these justifications individually.

1. Confidentiality and immunity encourage the filing of complaints and the cooperation of witnesses.

We note at the outset that Defendants have submitted no evidence, in the form of affidavits or otherwise, to meet the substantial burden of showing that the subject confidentiality provision is indeed justified by compelling state interests. Defendants' claim that confidentiality and immunity encourage the filing of complaints and the cooperation of witnesses is founded on mere assertion and conjecture. The lawyer who may be the target of the complaint surely will learn about the grievance and the identity of the complainant, whether the procedures are deemed confidential or not. Why a complainant would be more inclined to file a grievance against his lawyer, with the knowledge that he is thereby forever barred from speaking publicly about the grievance, is unclear. Indeed, it is just as likely that potential claimants would be dissuaded from initiating disciplinary proceedings if they reasonably believed that filing a petition with the Florida Bar would subject them to a perpetual bar from speaking out about the grievance. Thus, an equally compelling assertion can be made that the effect of Bar Rule 3–7.1, along with the attendant threat that violators of the rule will be held in contempt of court, may actually serve to discourage the filing of complaints, surely a result not in harmony with the regulations' intended purpose. At all events, no data or evidence has been presented by the Bar in support of this claim. Moreover, as Judge Roettger observed in *Doe v. Gonzalez,* 723 F.Supp. 690, 694 (1988), *affirmed* without opinion, 886 F.2d 1323 (11th Cir.1989), "protection of complainants could be advanced by the less drastic means of permitting confidentiality, not [by] requiring it."

2. Confidentiality, until the time of a finding of probable cause, protects lawyers from the injuries that would result from the public filing of frivolous complaints and the knowledge of the public that such complaints are being investigated by the Bar.

Defendants assert that Florida has a compelling interest in maintaining the in-

tegrity and competence of the Bar and that Rule 3–7.1's confidentiality provision serves to protect the reputation of individual attorneys and the Bar itself. While Florida surely has a valid interest in maintaining the integrity of the Bar, again it has offered no evidence to support the specific claim that Rule 3–7.1's confidentiality provision can be reasonably expected to accomplish this worthy end. We note at the outset that in the instant case there is no claim that the Bar grievance filed by Plaintiff was either frivolous or unfounded. To the contrary, Plaintiff's grievance was deemed to be well founded and the attorney involved was reprimanded by the Florida Bar.

However, even if we were to accept Defendants' claim that Rule 3–7.1 is necessary to protect the reputation and integrity of an individual attorney, and that the integrity of the Florida Bar as a whole is thereby enhanced—and no proof has been offered for either claim—protecting the reputation of an individual, or indeed the profession as a whole, would be insufficient justification for absolutely barring the dissemination of truthful information. *See Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 841–42, 98 S.Ct. 1535, 1542–43, 56 L.Ed.2d 1 (1978). In *Landmark*, The Supreme Court struck down as violative of First Amendment freedoms a Virginia statute that subjected persons to criminal sanctions for divulging information regarding judicial misconduct proceedings. In *Landmark*, a Virginia newspaper published an accurate article about a pending state judicial inquiry. The newspaper was subsequently fined $500 pursuant to a Virginia statute making judicial inquiries confidential and providing that "Any person who shall divulge information in violation of the provisions of this section shall be guilty of a misdemeanor."

Virginia argued, much as the Bar argues today, that the encroachment imposed upon free speech by its confidentiality provision was justified by the statute's intended purpose of protecting the reputation of Virginia's judges and maintaining the institutional integrity of its courts. The Supreme Court, however, found both of these justifications insufficient:

> [N]either the Commonwealth's interest in protecting the reputation of its judges, nor its interest in maintaining the institutional integrity of its courts is sufficient to justify the subsequent punishment of speech at issue here, even on the assumption that criminal sanctions do in fact enhance the guarantee of confidentiality. Admittedly, the Commonwealth has an interest in protecting the good repute of its judges, like that of all other public officials. Our prior cases have firmly established, however, that injury to official reputation is an insufficient reason "for repressing speech that would otherwise be free." The remaining interest sought to be protected, the institutional reputation of the courts, is entitled to no greater weight in the constitutional scales.

*Id.* at 841–42, 98 S.Ct. at 1543 (citations omitted). Here, the interests enumerated by Defendants to justify Rule 3–7.1's encroachment upon free speech are markedly similar to the interests found to be insufficient in *Landmark, supra.* Just as maintaining both the reputation of judges and the integrity of the courts could not justify the imposition of criminal sanctions against violators of the Virginia confidentiality provision struck down in *Landmark*, here we find Defendants' almost identical justifications to be similarly deficient. If maintaining the reputation of the judiciary as an abstract end is insufficient to justify encroaching upon the robust exercise of free speech, then maintaining the reputation of lawyers or the Bar is, in our view, equally insufficient.[2]

---

2. Defendants attempt to distinguish *Landmark* on two grounds: first, that *Landmark* involved non-participants in a disciplinary proceeding—members of the press—while the instant case involves a participant in a Bar disciplinary proceeding; and second, that the Virginia statute at issue imposed criminal sanctions against violators of Virginia's confidentiality provision while Rule 3–7.1 merely allows violators to be held in contempt of court. We find neither distinction persuasive.

3. Confidentiality avoids the loss of confidence in the Bar that might be caused by publication of frivolous claims.

This claimed interest overlaps with the second claimed interest. The first problem with this claim, however, is that this interest—avoiding loss of confidence in the Bar that might be caused by the publication of a frivolous claim—cannot fairly be advanced in the context of this case, as Plaintiff's grievance has been determined to be meritorious. Furthermore, in addressing a similar justification of the Virginia statute challenged in *Landmark*, The Supreme Court observed:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion.... [A]n enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

*Landmark Communications Inc. v. Virginia*, 435 U.S. 829, 842, 98 S.Ct. 1535, 1543, 56 L.Ed.2d 1 (1978) (quoting *Bridges v. California*, 314 U.S. 252, 270–71, 62 S.Ct. 190, 197, 86 L.Ed. 192 (1941)). We believe such reasoning applies with equal vigor here. Imposing an enforced silence on all aspects of Bar disciplinary matters—including investigations, probable cause hearings, and final dispositions—is more likely, in our view, to engender resentment, suspicion, and contempt for Florida's Bar and its legal institutions than to promote integrity, confidence, and respect. Moreover, the regulation misapprehends the character of American public opinion and the fairness of our people. As Justice Brandeis wrote in *Whitney v. California*, 274 U.S. 357, 375–76, 47 S.Ct. 641, 648, 74 L.Ed. 1095 (1927) (concurring):

> Those who won our independence believed ... that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; ... that public discussion is a political duty; and that this should be a fundamental principle of American government.... Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form. (Footnote omitted)

Finally, even if we assume *arguendo* that confidentiality will protect against the loss of public confidence in the Bar caused by the filing of frivolous suits, Rule 3–7.1 goes much further; it bars publication of non-frivolous suits as well. The fact that publication of meritorious claims against Bar members may result in the erosion of public confidence in the Bar is simply not a sufficient justification for absolutely prohibiting speech that would otherwise be free. *See Landmark, supra* 435 U.S. at 841–42, 98 S.Ct. at 1542–43.

4. Confidentiality facilitates the Bar's investigation of a complaint.

Again, Defendants' claim that the subject confidentiality provision will facilitate the Bar's ability to investigate complaints is founded on nothing more than assertion. As with the first three grounds offered to justify Rule 3–7.1's encroachment upon the First Amendment, Defendants have failed to submit any evidence to substantiate this claim. Moreover, keeping disciplinary proceedings completely confidential may actually hinder the Bar's investigation of a complaint by limiting access to third-party witnesses, who might otherwise feel obligated to come forward, to tell their side of the story. While the aim of facilitating the Bar's ability to investigate complaints is surely worthy, the means employed are not reasonably connected to that end.

Perhaps the most troubling aspect of the Rule's confidentiality provision is its sweep and breadth. *See Shelton v. Tucker*, 364 U.S. at 488, 81 S.Ct. at 252; *Smith v. Butterworth*, 866 F.2d at 1320. Insofar as the principal justification for the Rule is to protect the reputation of individual lawyers from the filing of *frivolous* complaints, and ultimately protect and maintain the integrity of the Bar itself, the confidentiality provision imposed goes too far. The provision at issue in this lawsuit does not merely

restrict publication of a pending complaint prior to the time such complaint is found by the Bar to be meritorious, but rather continues to bar forever publication by the complainant, even after the Bar has found a grievance to be well founded and has reprimanded the attorney in question. No justification for so sweeping an infringement on free speech has been offered by the Bar. Furthermore, the filing of false complaint could perhaps be punished, without imposing prior restraint on speech, in much the same way perjury or the filing of false reports of crime are punished. *See* Fla.Stat. §§ 837.02 and 817.49 [3]; *see also Doe v. Gonzalez, supra* at 694.

Insofar as Rule 3–7.1's justification is founded on protecting the reputation and integrity of the Florida Bar, the provision likewise goes beyond what is necessary. Assuming that the Rule protects the reputation of the Bar at all, we can see no reason to continue the Rule's prohibition on speech once a grievance is found to be meritorious. The idea that the suppression of truthful criticism of lawyers would somehow enhance or protect the reputation of the Bar is not persuasive. To the contrary, continuing the prohibitory effect of the Rule after a grievance against an attorney is found to be meritorious is far more likely to engender suspicion than foster confidence. In short, Rule 3–7.1 is not narrowly tailored to meet the specific interest it is said to serve. Rather, it broadly stifles speech when the ends it purports to achieve can be met by more narrow means. So broad an encroachment upon First Amendment freedoms cannot stand. *Shelton v. Tucker,* 364 U.S. at 488, 81 S.Ct. at 252; *Smith v. Butterworth,* 866 F.2d at 1320. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. The confidentiality provision of Florida Bar Rule 3–7.1, insofar as it prohibits complainants from disclosing information regarding Bar disciplinary proceedings, is hereby declared unconstitutional on its face and as applied to this Plaintiff. It is further

ORDERED AND ADJUDGED that Defendants are enjoined from enforcing the confidentiality provision of Florida Bar Rule 3–7.1 insofar as it prohibits complainants from disclosing information regarding Bar disciplinary proceedings.

DONE AND ORDERED.

---

**3.** Fla.Stat. Section 837.02 provides:
   (1) Whoever makes a false statement, which he does not believe to be true, under oath in an official proceeding in regard to any material matter shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084.
   (2) Knowledge of the materiality of the statement is not an element of this crime, and the defendant's mistaken belief that his statement was not material is not a defense.

Fla.Stat. Section 817.49 provides:
   Whoever willfully imparts, conveys or causes to be imparted or conveyed to any law enforcement officer false information or reports concerning the alleged commission of any crime under the laws of this state, knowing such information or report to be false, in that no such crime had actually been committed, shall upon conviction thereof be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.