David P. BAUGH; Dane Hess vonBreichenruchart, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

JUDICIAL INQUIRY AND REVIEW COMMISSION, ("JIRC"), Commonwealth of Virginia; Reno S. Harp, III, Counsel, Judicial Inquiry and Review Commission, in his official capacity; David T. Petty, Jr., Chair, Judicial In-

---

quiry and Review Commission, in his official capacity; William Shore Robertson, Vice Chair, Judicial Inquiry and Review Commission, in his official capacity; Stuart Shumate, Member, Judicial Inquiry and Review Commission, in his official capacity; B.M. Millner, Member, Judicial Inquiry and Review Commission, in his official capacity; E. Preston Grissom, Member, Judicial Inquiry and Review Commission, in his official capacity; Phyllis E. Galanti, Member, Judicial Inquiry and Review Commission, in her official capacity; Frederick H. Combs, Member, Judicial Inquiry and Review Commission, in his official capacity, Defendants–Appellees.

No. 89–2965.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1990.

Decided July 2, 1990.

Rodney Alan Smolla (argued), Marshall–Wythe School of Law, College of William & Mary, Williamsburg, Va. (Gerald T. Zerkin, Karen L. Ely–Pierce, Frank M. Feibelman, Gerald T. Zerkin & Associates, Richmond, Va., on brief), for plaintiffs-appellants.

William Gray Broaddus, McGuire, Woods, Battle & Boothe, Richmond, Va. (Grace R. den Hartog, Scott C. Oostdyk, on brief), for defendants-appellees.

Before WIDENER and WILKINS, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

David P. Baugh and Dane Hess vonBreichenruchart appeal the order of the district court dismissing their complaint against the Judicial Inquiry and Review Commission (Commission), its counsel in his official capacity, and the seven individual Commis-

sion members in their official capacities. Baugh and vonBreichenruchart allege that Virginia Code section 2.1–37.13 (1987) violates their constitutional rights of free speech and to petition the government. We reverse and remand to the district court with instructions to reinstate the complaint.

## I.

A new Virginia Constitution adopted in 1971 required the Virginia General Assembly to create a Judicial Inquiry and Review Commission "with the power to investigate charges which would be the basis for retirement, censure, or removal of a judge." Va. Const. art. VI, § 10. Section 10 also provides that "[p]roceedings before the Commission shall be confidential." *Id.* Pursuant to this mandate, the Virginia General Assembly created the Commission in 1971.

Section 2.1–37.13 requires confidentiality of papers filed with and proceedings before the Commission and provides in part:

All papers filed with and proceedings before the Commission, ... including the identification of the subject judge as well as all testimony and other evidence and any transcript thereof made by a reporter, shall be confidential and shall not be divulged, other than to the Commission, by any person who either files a complaint with the Commission, or receives such complaint in an official capacity, or investigates such complaint, is interviewed concerning such complaint by a member, employee or agent of the Commission, or participates in any proceeding of the Commission, or the official recording or transcription thereof, except that the record of any proceeding filed with the Supreme Court shall lose its confidential character.

Va.Code § 2.1–37.13. Divulging information in violation of this section is a misdemeanor. *Id.*

Baugh, an attorney licensed to practice in Virginia, filed a complaint with the Commission concerning an incident that occurred while he was representing a client before a state judge. vonBreichenruchart filed her complaint as a result of an incident that occurred during a state court proceeding to which she was a party. Since neither record has been filed with the Virginia Supreme Court, section 2.1–37.13 states that the contents of the complaints filed with the Commission must remain confidential, as well as the fact that complaints have been filed. And Baugh and vonBreichenruchart each received a letter from the Commission warning that disclosure of any information concerning their complaint against a judge could result in criminal prosecution.

Baugh and vonBreichenruchart subsequently filed this action against the Commission seeking injunctive relief and a declaratory judgment that section 2.1–37.13 of the Virginia Code is unconstitutional because it violates their right to free speech and their right to petition the government under the first and fourteenth amendments to the United States Constitution and Article I, section 12, of the Virginia Constitution.

Granting the Commission's motion to dismiss, the district court held that section 2.1–37.13 "is a content-neutral effort to promote substantial government interests while leaving open alternative channels of communication" and that it is a "valid time, place and manner regulation." In holding that this section is content-neutral, the district court reasoned:

[T]he statute bans all speech regarding the Commission's proceedings.... To the extent that plaintiffs' comments would be directed at the [Commission] rather than at the judge, for example charging the Commission with failure to investigate complaints thoroughly, the statute similarly bans speech by defenders and critics alike, and does so not to muffle criticism but to encourage complainants and witnesses to speak fully and truthfully.

The district court found that the statute left open alternative means of communication because a person who files a complaint is "free to disclose the name of the judge and the events that led them to file the complaint, but merely cannot say that they

filed a complaint or what action the [Commission] took on the complaint." The district court also held that the "incidental restriction on speech does not impermissibly burden the plaintiffs' right to petition the government."

## II.

■ This appeal presents the very narrow issue of whether Virginia may punish a person who files a complaint with the Commission for disclosing the fact that a complaint has been filed and for disclosing the action or non-action taken by the Commission.[1] It is clear that Virginia could not, consistent with the first amendment, punish a person for publicly criticizing a judge or the Commission and the district court correctly found that this statute does not prohibit this conduct. However, the statute does prevent a complainant from coupling these criticisms with the factual statement that a complaint has been filed and the action, if any, taken by the Commission.

Section 2.1–37.13 originally provided that confidential information could not be divulged by "any person to anyone except the Commission." However, the constitutionality of this section was assailed in *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), a case involving the conviction of a newspaper for divulging information in violation of section 2.1–37.13. The newspaper had accurately reported about a pending inquiry before the Commission and identified the judge who was the subject of the investigation. The Supreme Court reviewed section 2.1–37.13 to determine "whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the Judicial In-

quiry and Review Commission." *Id.* at 837, 98 S.Ct. at 1540. The Court reversed the conviction, concluding that "the publication Virginia seeks to punish under its statute lies near the core of the First Amendment, and the Commonwealth's interests advanced by the imposition of criminal sanctions are insufficient to justify the actual and potential encroachments on freedom of speech and of the press which follow therefrom." *Id.* at 838, 98 S.Ct. at 1541. After this decision the Virginia General Assembly amended section 2.1–37.13 to limit the confidentiality restrictions to participants in Commission proceedings.[2]

Since the constitutionality of the original version of section 2.1–37.13 was addressed in *Landmark Communications,* the Supreme Court has held that "[g]overnment regulation of expressive activity is content-neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism,* — U.S. ——, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (emphasis in *Ward* ) (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984)). "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

■ The Commission maintains that section 2.1–37.13 is content-neutral because it does not bar criticism of judges and applies equally to a judge's supporters and critics. The Commission's argument, however, misconstrues the thrust of content-neutrality analysis and confuses that analysis with the distinct concept of viewpoint-neutrality. Viewpoint-neutrality is concerned with limitations on speech on the basis of the viewpoint expressed and "the First Amendment

---

**1.** Of course, when the record is filed with the Virginia Supreme Court, it loses its confidentiality. Additionally, the statutory requirement that the actual proceedings before the Commission are to be confidential is not before us.

**2.** Section 2.1–37.13 was amended again in 1984 to provide that "a judge who is under investiga-

tion by the Commission, or any person authorized by him, may divulge information pertaining to a complaint filed against such judge as may be necessary for the judge to investigate the allegations in the complaint in preparation for the proceedings before the Commission."

forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). Rather than supporting a finding of content-neutrality, the Commission's argument that section 2.1–37.13 applies equally to supporters and critics supports a finding that the provision is viewpoint-neutral.[3] However, viewpoint-neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis. In determining whether a statute is content-neutral, courts should focus only on the operation of the statute in relation to the status of the speech without regard to the identity of the speaker.

The Commission also attempts to categorize section 2.1–37.13 as a valid time, place, and manner restriction that serves a purpose unrelated to the content of the speech and has only secondary effects on speech. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Clark, supra. City of Renton* involved an ordinance that prohibited adult theatres from locating within 1000 feet of any residential zone. The Supreme Court upheld the ordinance as a valid content-neutral, time, place, and manner restriction because the ordinance was not directed at the content of the films but at the "secondary effects" of adult theatres on the community, *i.e.,* crime prevention, maintenance of property values, and protection of residential neighborhoods. *See City of Renton,* 475 U.S. at 47, 106 S.Ct. at 928. *Clark* involved a National Park Service regulation that permitted camping only in designated campgrounds. The Supreme Court upheld the regulation because it was content-neutral and left open alternative channels of communication. *See Clark,* 468 U.S. at 295, 104 S.Ct. at 3069–70. Section 2.1–37.13, however, is a direct regulation of speech and to be content-neutral, its justification must be unrelated to the content of the speech.

██ The justification the Commission asserts for section 2.1–37.13 is that it is an effective method for identifying unfit or disabled judges and facilitating disciplinary action or their removal from the bench. Although the Commission argues that this justification is unrelated to the content of the speech, it is inescapable that the asserted justification for section 2.1–37.13 is very closely related to the content of the speech. The reason that it may be an effective method of motivating disabled or unfit judges to voluntarily resign from the bench is that by resigning, a judge may avoid the public criticism that might follow were it revealed that a complaint had been filed against him. It is the content of the speech that is critical to section 2.1–37.13 for it silences all speech related to the actual filing of a complaint with the Commission and thus is not a regulation that has only the "secondary" or "incidental" effect of restricting speech. The outright, direct ban on speech concerning this single topic can only be justified by the content of the speech. *See Doe v. Supreme Court of Florida,* 734 F.Supp. 981 (S.D.Fla.1990) (Florida Bar Rule prohibiting complainant from disclosing information regarding disciplinary proceedings is aimed directly at content of speech); *Providence Journal Co. v. Newton,* 723 F.Supp. 846, 854 (D.R.I. 1989) (confidentiality provisions of Rhode Island's government ethics law prohibiting public discussion of existence and content of complaint filed against public official are "prototypical content-based regulations of protected speech").

### III.

██ Because section 2.1–37.13 restricts speech on the basis of its content, it must be tested against " 'the most exacting scrutiny.' " *Texas v. Johnson,* — U.S. —, 109 S.Ct. 2533, 2543, 105 L.Ed.2d 342 (1989) (quoting *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988)).

---

**3.** Appellants argue that section 2.1–37.13 is not viewpoint-neutral because of the exception for a judge who is the subject of investigation. Be-
cause we conclude that section 2.1–37.13 is not content-neutral, we need not engage in an analysis of viewpoint-neutrality.

To withstand this scrutiny, the Commission must demonstrate that the confidentiality provision " 'is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' " *Boos*, 485 U.S. at 321, 108 S.Ct. at 1164 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). Instead of applying the compelling interest test, the district court reached its conclusion after incorrectly applying the less stringent substantial interest test. We thus remand for further development of the record, if deemed necessary, with all parties on notice that section 2.1–37.13 is not content-neutral and that the standard the district court must apply in its analysis is the compelling interest one.

### IV.

The district court also dismissed appellants' claim that section 2.1–37.13 violates their right to petition the government. It is apparent that the district court relied on its conclusion that section 2.1–37.13 was only an incidental restriction on speech in determining that the right to petition the government was not burdened. We are not persuaded that the result would be the same if, after applying the compelling interest test, the district court had determined that the right to free speech was abridged. Thus, we reverse the dismissal of this claim and remand for reconsideration consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.