Original
No. SMC-95-001

PETITION OF TROY E. BROOKS

May 8, 1996

*Philip T. Cobbin*, of Canaan, by brief for the petitioner.

*Donahue, McCaffrey, Tucker & Ciandella*, of Exeter (*Michael J. Donahue* and *Robert M. Derosier* on the brief), for the committee on professional conduct.

*Blodgett, Makechnie & Vetne*, of Newburyport, Massachusetts (*John H. Vetne* on the brief), for the respondent.

THAYER, J. The petitioner, Troy E. Brooks, invoked the original jurisdiction of this court to challenge the constitutionality of Supreme Court Rule 37(17), as it existed prior to an amendment dated March 7, 1996, which provided for confidentiality in the attorney disciplinary process. We conclude that the pre-amendment rule violated a complainant's first amendment right to free speech.

Beginning in September 1993, the petitioner filed a series of three complaints with the professional conduct committee (PCC or committee), each alleging misconduct by a separate attorney. In all three cases, the committee responded by letter with a finding of no professional misconduct or a failure to allege professional misconduct. These letters ended with a caveat explaining the requirement of confidentiality:

> Please be advised that all matters relating to complaints submitted to the Committee, and any action taken by the Committee[,] shall be kept confidential, unless otherwise provided by the Rules of the Supreme Court. Rule 37(17)(g) states: "All participants in the proceedings shall conduct themselves SO AS TO MAINTAIN THE CONFIDENTI-

ALITY MANDATED BY THIS RULE. Violation of this duty shall constitute an act of contempt of the supreme court." (Emphasis added.)

The petitioner argues that the imposition of confidentiality violates his right to free speech by subjecting him to possible contempt proceedings for divulging information related to the complaints. Specifically, he desires to disclose the fact that he filed the complaints and information learned through interaction with the committee, and to state his opinion on the PCC's handling of the complaints.

We note initially that the petitioner has violated, on several occasions, the provisions of the rule to which he objects. *See, e.g., Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 636 (1st Cir. 1996). All of the petitioner's conduct involving allegedly protected speech constituting the gravamen of his petition took place after the committee had dismissed his complaints. His conduct, accordingly, would not run afoul of the rules as they have been amended. *See* SUP. CT. R. 37(17)(g) (amended March 7, 1996). This court has not used, and will not use, against the petitioner its contempt powers pursuant to Rule 37(17)(g) as it existed prior to the March 7, 1996, amendments. As a result, the petitioner's right to free speech, which he has exercised and continues to exercise, has not been abridged. Dismissing his claim as moot would be an appropriate result.

■ "[T]he question of mootness is one of convenience and discretion and is not subject to hard-and-fast rules," however. *Appeal of Hinsdale Fed. of Teachers*, 133 N.H. 272, 276, 575 A.2d 1316, 1318 (1990) (quotation omitted). We generally will refuse to review a question that "no longer presents a justiciable controversy because issues involved have become academic or dead," *id.* at 276, 575 A.2d at 1318-19 (quotation omitted), but may review a question that has become moot if it involves a significant constitutional question or an issue of significant public concern, *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 675, 394 A.2d 828, 829 (1978). We will address the petitioner's claim because it raises a significant constitutional issue.

Although the petitioner invokes both the Federal and State Constitutions to support his claim, his reference to the latter is limited to the conclusory assertion that part I, article 22 of the State Constitution, which protects the right to free speech, is "relevant" to his case and "consistent" with corresponding federal law. Because these references are "without any supporting argument or further reference that might be thought to develop a position on independent State grounds," *In re N.H. Disabilities Rights Center, Inc.*, 130

N.H. 328, 334, 541 A.2d 208, 212 (1988), we consider the petitioner's claim as arising solely under the first amendment to the Federal Constitution as applied to the States through the fourteenth amendment. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925). The petitioner's brief may also be read as suggesting that a public right of access to the hearings and files of the PCC exists under part I, article 8 of the State Constitution. Because this claim has been made, if at all, only in "passing reference," we do not consider it. *State v. Hermsdorf*, 135 N.H. 360, 365-66, 605 A.2d 1045, 1048 (1992).

■ We have both inherent and statutory authority to discipline attorneys. RSA 311:8 (1995); RSA 490:4 (1983); *Wehringer's Case*, 130 N.H. 707, 718, 547 A.2d 252, 259 (1988), *cert. denied*, 489 U.S. 1001 (1989). "The task of supervising and disciplining attorneys within this State falls squarely upon the shoulders of this court." *Astles' Case*, 134 N.H. 602, 605, 594 A.2d 167, 170 (1991). In furtherance of this task, and pursuant to our rule-making authority under the State Constitution, "this court . . . has established a professional conduct committee which has responsibility for regulating attorney conduct." *Rousseau v. Eshleman*, 128 N.H. 564, 567, 519 A.2d 243, 245 (1986) (citation omitted); *see* N.H. CONST. pt. II, art. 73-a. The committee is charged, under Supreme Court Rule 37 (amended March 7, 1996), with investigating attorney misconduct and disciplining, or requesting discipline by this court for, attorneys found to have violated standards of professional conduct. The procedures followed by the committee are set out in Rule 37 and in the Rules and Procedures of the Professional Conduct Committee (amended March 7, 1996).

The confidentiality provisions of the pre-amendment Supreme Court Rule 37(17) provided:

(17) *Confidentiality*:

(a) *Proceedings Alleging Misconduct.* All records and proceedings involving allegations of misconduct by an attorney shall be confidential and shall not be disclosed except:

(1) When the prosecution of formal charges is initiated by the filing of a petition with the New Hampshire Supreme Court, in which case, except as provided by section 9 regarding resignations, the pleadings, all information admitted at the proceedings, the proceedings themselves (other than deliberations of the supreme court), and the decision, shall be public; or

(2) When an attorney seeks reinstatement pursuant to section 12, in which case the proceedings before the committee shall be conducted the same as prescribed in subsection (1); or

(3) When the attorney/respondent, prior to the filing of formal charges, requests that the matter be public, in which case the entire file, other than the work product and internal memoranda of the committee, shall be public; or

(4) If the investigation is predicated upon a conviction of the respondent for a crime or upon public discipline imposed upon the respondent in another jurisdiction, in which case the entire file pertaining to the crime or the public discipline, other than the work product and internal memoranda of the committee, shall be public.·

. . . .

(g) *Duty of Participants.* All participants in the proceedings shall conduct themselves so as to maintain the confidentiality mandated by this rule. Violation of this duty shall constitute an act of contempt of the supreme court.

The parties agree that the proceedings initiated by the petitioner's three complaints to the PCC do not fall under any of the exceptions· listed in prior Rule 37(17)(a).

■■ The PCC interprets the prior rule to prohibit the petitioner from divulging both the fact that he filed the complaints and any information he might have learned from his interaction with the committee, but not to prevent him from disclosing the underlying facts and substance of his complaints. This is correct, but not quite complete. The plain language of the rule precluded disclosure of information related to *proceedings* but not information gained independently of the disciplinary process, including the underlying set of facts that led to the filing of a complaint. The prohibition extended further, however, to encompass all aspects of the complainant's involvement with the disciplinary process. Thus, unless an exception to the rule of confidentiality applied, a complainant was barred from revealing the fact that a complaint had been filed, what information or testimony the complainant provided the committee, any action taken by the committee in response to the complaint, and any information acquired by the complainant through interaction with the committee. Even when the committee deemed a complaint well-founded and the attorney under investigation received an

admonition or a reprimand, the complainant was still forever barred from publicly disclosing this information, unless an exception applied. Because the language of the prior rule is clear and unambiguous, its meaning is not subject to modification by judicial construction. *See State v. Flynn,* 123 N.H. 457, 462, 464 A.2d 268, 271 (1983).

We now turn to the question of whether prior Rule 37(17), thus interpreted, offended the petitioner's right to free speech under the first amendment. We think it obvious, and the PCC does not dispute, that the rule was triggered by the content of the expression in question. The rule suppressed speech based on the perceived beneficial effects of confidentiality, and a determination of what speech was subject to the rule could not be made without reference to the content of the speech. *See Madison Sch. Dist. v. Wisconsin Emp. Rel. Comm'n,* 429 U.S. 167, 175-76 (1976); *Doe v. State of Fla. Judicial Qualifications Com'n,* 748 F. Supp. 1520, 1523-24 (S.D. Fla. 1990).

The scope of prior Rule 37(17)(a) extended to speech traditionally accorded the most solicitous protection of the first amendment; namely, criticism of the government's performance of its duties. *See Butterworth v. Smith,* 494 U.S. 624, 632 (1990); *Mills v. Alabama,* 384 U.S. 214, 218-19 (1966). Under the rule, a complainant wishing to criticize the PCC's handling of a particular investigation might have been permanently barred from doing so because disclosure of the mere fact that an investigation took place, as well as the specific actions taken by the committee, would have violated the confidentiality of the process. More generally, public discussion on the conduct of particular attorneys and corresponding investigations by the PCC would have been hindered, when not altogether stifled, by the rule. It cannot be gainsaid that protection of such debate lies at the heart of the first amendment. Any regulation attempting to rein in that debate must pass the strictest of constitutional tests. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 269-70 (1964).

The United States Supreme Court has stated that "[c]ontent-based regulations are presumptively invalid," *R.A.V. v. St. Paul,* 505 U.S. 377, 382 (1992), and that "state action to punish the publication of truthful information seldom can satisfy constitutional standards," *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 102 (1979). A content-based prohibition on speech concerning matters of public interest "must be subjected to the most exacting scrutiny." *Boos v. Barry,* 485 U.S. 312, 321 (1988). To survive such scrutiny, the prohibition must serve a compelling State interest and be narrowly

tailored to accomplish that interest, *Perry Ed. Assn v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983), or else the targeted speech must fall into one of a few narrowly-defined categories of expression not meriting full protection, *see R.A.V. v. St. Paul*, 505 U.S. at 383 (listing categories); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (according less protection to information gained through trial court's discovery process). If the State has the power to regulate some speech, that power "must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940).

We have previously recognized several purposes served by prior Rule 37(17): (1) protection of the reputation of an attorney from meritless complaints; (2) protection of the anonymity of complainants; and (3) maintenance of the integrity of pending grievance committee investigations. *State v. Merski*, 121 N.H. 901, 910, 437 A.2d 710, 715 (1981), *cert. denied*, 455 U.S. 943 (1982). The PCC in its brief provides several additional purposes served by confidentiality:

> (4) chronic or disgruntled litigants would use the Committee as a forum for collateral litigation taxing the limited resources of the Committee; (5) avoidance of the possibility that a complainant might use publication of the fact that a complaint had been filed as a "bully pulpit" or to pursue a vendetta; (6) witnesses and client confidences are protected if the allegations are unsubstantiated; and (7) preserving informal discipline.

To this list may be added two further purposes: (8) protection of the State bar from the loss of confidence that might result from public disclosure of frivolous complaints, *see Doe v. Supreme Court of Florida*, 734 F. Supp. 981, 987 (S.D. Fla. 1990); and (9) encouragement of investigated attorneys to resign under Supreme Court Rule 37(9), *see Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 835-36 (1978).

The information that was protected from disclosure under the prior rule included the fact that a complaint had been filed, what information or testimony the complainant provided the committee, the action taken by the committee in response to the complaint, as well as information learned by the complainant through the complainant's interaction with the committee, including comments and testimony of other participants in the process. This information bears directly on a complainant's ability to comment on the workings of the attorney disciplinary process. The fact that a complainant initiates an investigation does not change the analysis.

*See Lind v. Grimmer*, 30 F.3d 1115, 1118-19 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 902 (1995). We begin our review by examining the State interests served by the confidentiality provisions of prior Rule 37(17).

■ We consider first the protection of reputation, both of the State bar as an institution and of individual attorneys under investigation, from frivolous complaints. In *Landmark Communications, Inc.*, the United States Supreme Court stated, in the judicial discipline context, that "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free. . . . [T]he institutional reputation of the courts[] is entitled to no greater weight in the constitutional scales." 435 U.S. at 841-42 (quotation and citations omitted). Surely the reputation of the State bar is entitled to no more protection than is the reputation of the State judiciary.

■ With regard to attorneys in their individual capacities, we have long held that attorneys are "officer[s] of the court." *Merski*, 121 N.H. at 908, 437 A.2d at 713. Although we recognize that attorneys are not public officials in the sense that judges are, the fundamental importance of the first amendment, combined with the role of attorneys as officers of the court, compels the application of similar principles of free expression to the reputational interests of attorneys, at least with respect to the issues in this case.

■ ■ Assuming *arguendo* that protection of reputation from damage caused by frivolous complaints may justify restriction of a complainant's right to expression, prior Rule 37(17)(a) and (g) prohibited more speech than was necessary by preventing disclosure of well-founded complaints as well, and accordingly were overbroad. *See Shelton v. Tucker*, 364 U.S. 479, 488-90 (1960); *Cantwell*, 310 U.S. at 304. Any interest that an attorney or the State bar as an institution might have in preventing damage to reputation caused by well-founded complaints is insufficient to justify curtailing a complainant's free speech rights. *See N.A.A.C.P. v. Button*, 371 U.S. 415, 432 (1963) (considering application of prohibitory rule to contexts different than those presented in that case).

To the extent legitimate interests in reputation are at stake, an accused attorney has always had recourse to a defamation action based on defamatory statements made by a complainant outside of the disciplinary process. Supreme Court Rule 37(5), as it existed during the time relevant to this case, provided:

(5) *Immunity*: Each person shall be immune from civil liability for all of his statements made in good faith to the

committee, the office of the attorney general or to this court or given in any investigation or proceedings pertaining to alleged misconduct of an attorney. *The protection of this immunity does not exist as to statements made to others.*

(Emphasis added.) In addition, "the filing of false complaint[s] could perhaps be punished, without imposing prior restraint on speech, in much the same way perjury or the filing of false reports of crime are punished." *Doe v. Supreme Court of Florida,* 734 F. Supp. at 988.

The confidentiality provisions were not sufficiently narrowly tailored to meet any State interest in protecting the confidences of complainants and witnesses. We assume, *arguendo,* that the State's legitimate interest in "encourag[ing] complaints, assistance in investigations, and complete and truthful testimony," *Kamasinski v. Judicial Review Council,* 44 F.3d 106, 110 (2d Cir. 1994), requires that confidentiality of testimony be available to complainants and witnesses. This interest could be advanced by permitting, rather than requiring, confidentiality. *See Butterworth v. Smith,* 494 U.S. at 633 (concluding in grand jury context that "the concern that some witnesses will be deterred from presenting testimony due to fears of retribution is . . . not advanced by this prohibition; any witness is free *not* to divulge his own testimony").

We next address the State interest of preserving the integrity of pending investigations by protecting PCC proceedings from misuse as a "forum for collateral litigation," as a "bully pulpit" endowing a complaint with an unwarranted air of legitimacy, or as a means of pursuing a vendetta. We agree that such misuse of the disciplinary process is to be avoided, but the concern in each of these three cases is misplaced when a complaint has merit, because bringing a valid complaint can hardly qualify as misuse of the disciplinary process. If the concern relates to meritless claims, then the confidentiality provisions of prior Rule 37(17) were overbroad as applied to *meritorious* complaints. *See Doe v. State of Fla. Judicial Qualifications Com'n,* 748 F. Supp. at 1528.

The final State interest to be considered is the facilitation of the PCC's duties through "preserving informal discipline" and encouraging resignation by attorneys pursuant to Rule 37(9). Under the prior rules, the willingness of an attorney to accept an admonition or reprimand without formal proceedings or to resign voluntarily with prejudice may well have depended on whether the complaint would remain confidential, thus obviating the need to seek vindication against a publicly-filed complaint. This gain in efficiency of the process and the cooperation of attorneys under investigation

is not sufficiently compelling to justify restriction of a complainant's fundamental right to free expression, particularly considering the broad scope of the confidentiality provision in prior Rule 37.

The confidentiality provisions of prior Supreme Court Rule 37(17)(a) and (g) were not sufficiently narrowly tailored to meet compelling State interests and accordingly have failed first amendment scrutiny.

*So ordered.*

BRODERICK, J., did not participate; BATCHELDER, J., retired, participated by special assignment under RSA 490:3; all who participated concurred.