Board of Dental Examiners
No. 95-626

# APPEAL OF LLOYD V. SUTFIN, D.D.S.

## (New Hampshire Board of Dental Examiners)

April 16, 1997

*Jeffery R. Howard*, attorney general (*Wynn E. Arnold*, assistant attorney general, on the brief and orally), for the State.

*Douglas & Douglas*, of Concord (*Charles G. Douglas, III* and *C. Kevin Leonard* on the brief, and *Mr. Douglas* orally), for the respondent.

BRODERICK, J. The respondent, Lloyd V. Sutfin, D.D.S., appeals a decision of the New Hampshire Board of Dental Examiners (board) reprimanding and fining him for a deceptive and misleading professional services advertisement that ran in several newspapers. *See* RSA 317-A:18-a, VI (1995). We hold that the board's order violated the respondent's commercial free speech rights under the first amendment to the United States Constitution. Accordingly, we reverse.

I

The respondent, a licensed New Hampshire periodontist, patented a vibrating probe designed to treat gum disease. During 1994, the respondent advertised the surgical benefits of his new device in several New Hampshire newspapers:

> The United States Patent and Trademark Office has recently awarded a patent to Dr. Lloyd Sutfin covering surgical methods which can make periodontal treatment easier for you. State authorities have acknowledged that these new procedures have helped make ordinary gum surgery no longer necessary and provide several advantages to patients such as less discomfort, inconvenience, and change in appearance, less tooth loss, and fewer appointments. *These surgical approaches can be performed without therapists placing their hands within the patient['])s mouth and without cutting through the outer surface of the gum.* No sutures are needed. Dental flossing is not required. Similar procedures are used in eye surgery. Find out if you really need surgery or extractions, first, then if these newly patented approaches can benefit you. Call for a consultation appointment or to obtain our information packet.

After reviewing the advertisement, the board notified the respondent in September 1994 that it intended to conduct a hearing to determine if the advertisement constituted professional misconduct under RSA 317-A:17, II(h) (1995). That statute authorizes the board to sanction a dentist for advertising that:

> (1) Deceives or is intended to deceive the public concerning dental services, techniques, the qualifications of a licensee, or the prices to be charged;

> (2) Claims or suggests that the licensee enjoys professional superiority or performs services in a manner superior to

other persons licensed by this chapter or that the licensee performs services or any particular service in a painless manner; or

(3) Announces the use of any drug or medicine of an unknown formula or any system or anesthetic that is unnamed, misnamed, misrepresented, or not in reality used.

RSA 317-A:17, II(h).

In November 1994, the board conducted an evidentiary hearing at which the respondent, his practice manager, and the board's expert provided the sole testimony. Thereafter, the board found that the respondent had engaged in conduct prohibited by RSA 317-A:17, II(h)(1) and (2), and RSA 317-A:17, II(j), which allows the board to discipline a dentist for violations of ethical guidelines. The respondent was reprimanded and fined by the board and also instructed to cease the publication of his advertisement.

The board's final order contains four principal objections to the respondent's advertisement. First, the board found deceptive that portion of the advertisement which declares that "State authorities have acknowledged" the benefits of the procedure. The respondent alleged that this statement was supported by findings made by the Vermont Board of Dental Examiners in a stipulated settlement and the decision of a New Hampshire trial court. The board apparently disregarded the Vermont Dental Board's findings because they did not come from a *New Hampshire* authority, and the New Hampshire court decision because it did not directly address the effectiveness of the respondent's procedures. Second, the board found deceptive the claim that the new procedure could be "performed without therapists placing their hands in the patient[']s mouth" because it implied that the respondent's technique was superior to conventional methods of treatment. The board also concluded that this portion of the advertisement violated ethical guidelines by omitting facts needed to make the statement "not materially misleading." Third, the board found that the discussion of the procedure's alleged advantages, such as "less discomfort, inconvenience, and change in appearance," implied that the respondent's techniques were superior to those utilized by other periodontists. Finally, the board found that the advertisement implied professional superiority by claiming that the "new procedures have helped make ordinary gum surgery no longer necessary."

On appeal, the respondent advances several arguments. He asserts that the board's order of hearing violated his right to due process under the State and Federal Constitutions, and that the

prohibition of his advertisement infringed his rights under the first amendment to the United States Constitution. Further, he argues that the board's decision is unsupported by the record and that the board demonstrated a fundamental bias against him which prevented a fair and objective hearing. Our disposition of the respondent's first amendment argument, however, obviates the need to address the remainder of his claims. *See Dartmouth Motor Sales, Inc. V. Wilcox*, 128 N.H. 526, 531, 517 A.2d 804, 808 (1986).

## II

■ The respondent does not argue that the board's decision violated his commercial speech rights under the State Constitution; consequently, we confine our analysis to "the first amendment to the Federal Constitution as applied to the States through the fourteenth amendment." *Petition of Brooks*, 140 N.H. 813, 817, 678 A.2d 140, 142 (1996); *see also Gitlow v. New York*, 268 U.S. 652, 666 (1925). It is now well settled that the first and fourteenth amendments protect professional advertising. *See In re R.M.J.*, 455 U.S. 191, 203 (1982); *Bates v. State Bar of Arizona*, 433 U.S. 350, 363-66 (1977). The State, therefore, carries the burden of justifying any restriction of commercial speech. *See Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

## A

■ The State has the power to ban commercial speech that is false, deceptive, or misleading. *See Ibanez v. Florida Dept. of Business and Professional Regulation, Bd. of Accountancy*, 512 U.S. 136, 142 (1994). The United States Supreme Court has determined that there are two types of deceptive or misleading speech: commercial speech that "is inherently likely to deceive" and speech that, while initially unobjectionable, is supported by a record that indicates that the particular form or method of speech "has in fact been deceptive." *In re R.M.J.*, 455 U.S. at 202; *see also Ibanez*, 512 U.S. at 144-45; *Peel v. Attorney Disciplinary Comm'n of Ill.*, 496 U.S. 91, 112 (1990) (Marshall, J., concurring). When commercial speech is inherently likely to deceive, the Court has recognized that the government can take preemptive action, and need not wait for the public to suffer actual harm. *See Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 464-66 (1978). Conversely, if the speech at issue is facially unobjectionable, it still may be banned if it is misleading in fact, but the State has the burden of showing actual harm. *See Ibanez*, 512 U.S. at 145.

■ The government also retains a more circumscribed authority to regulate another category of speech. Specifically, speech that is,

at worst, *potentially* misleading can only be regulated if the government can show that the restriction directly and materially advances a substantial government interest in a manner no more extensive than necessary to serve that interest. *Ibanez*, 512 U.S. at 142; *see Peel*, 496 U.S. at 109 (plurality opinion); *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). The Supreme Court's decisions in this area reflect a preference for regulations that impose lesser burdens on speech, such as disclosure requirements, as opposed to outright suppression. *See Texans Against Censorship v. State Bar of Texas*, 888 F. Supp. 1328, 1347 (E.D. Tex. 1995) (collecting cases), *aff'd*, 100 F.3d 953 (5th Cir. 1996); *see also Bates*, 433 U.S. at 375. Claims that the public must be shielded from truthful material solely because it might react to the speech in an illogical or imprudent manner must be closely scrutinized. *See 44 Liquormart, Inc. v. Rhode Island*, 116 S. Ct. 1495, 1508 (1996) (opinion of Stevens, J.); *Peel*, 496 U.S. at 110-11 (plurality opinion); *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 96-97 (1977).

## B

■ The record before us indicates that the board never found the speech in question misleading in fact, as there is no evidence in the record that the speech actually harmed any member of the public. Neither did the board pursue an alternative ground for its restrictions, as it made no finding that the speech was potentially misleading and that suppression of the respondent's advertisement would advance a substantial governmental interest. Accordingly, we must decide whether the language of the advertisement that the board found objectionable is inherently misleading. "Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law" that an appellate court must review *de novo. Peel*, 496 U.S. at 108 (plurality opinion).

■ A term is inherently misleading if it is "likely to deceive the public based upon the general public's use of the term." *Snell v. Engineered Systems & Designs, Inc.*, 669 A.2d 13, 19 (Del. 1995). Statements that give significance to otherwise inconsequential facts are not, in and of themselves, inherently misleading. *See In re R.M.J.*, 455 U.S. at 205-06 (noting that such statements can be *potentially* misleading). A statement is not *inherently* misleading if it only becomes misleading with reference to outside facts. *See Strang v. Satz*, 884 F. Supp. 504, 509 (S.D. Fla. 1995). The ignorance of the public cannot be used as the sole basis for declaring speech inherently misleading: "If the naiveté of the public will cause

advertising by [professionals] to be misleading, then it is the [profession's] role to assure that the populace is sufficiently informed as to enable it to place advertising in its proper perspective." *Bates*, 433 U.S. at 375. In general, a statement will only be inherently misleading if the statement, standing alone, will almost unavoidably lead to fraud, undue influence, intimidation, or other duplicity. *Cf. In re R.M.J.*, 455 U.S. at 202.

 In light of the preceding discussion, it is apparent that the representations in the respondent's advertisement that the board banned are not of the type or quality which are so intrinsically deceptive that they can be deemed inherently misleading. While many of the statements are less than complete, nothing in the record before us supports a determination that these statements can be banned as inherently misleading. Indeed, many of the statements can only be termed misleading when viewed in light of certain assumptions; such a requirement, however, undermines any claim that this speech is *inherently* misleading. Accordingly, the board's order must be reversed.

### III

Nothing in this opinion should be read to suggest that the board can never regulate dental advertising under RSA 317-A:17, II(h). Indeed, some of the statements that the board identified may well be potentially misleading. It would be a rare case, however, in which the board could justify an outright ban of commercial speech which merely has the *potential* to mislead. *See Texans Against Censorship*, 888 F. Supp. at 1347. Upon the record before us it is apparent that the board never contemplated the first amendment implications of its order. The board's order neither references the Supreme Court's commercial speech cases, their import, nor the first amendment itself. Moreover, the board failed to show any awareness of the first amendment, save a fleeting mention of the issue in its response to the respondent's motion to dismiss. While the board certainly has the authority to regulate false or deceptive advertising, it must do so with the first amendment firmly in mind. *Cf. Appeal of City of Portsmouth, Bd. of Fire Comm'rs*, 140 N.H. 435, 438, 667 A.2d 345, 348 (1995).

It is important for those who are empowered to regulate commercial speech to fully appreciate the cherished liberty of free expression. If the fundamental essence of the first amendment is to survive, we must guard against unsubstantiated and unwarranted restrictions aimed at all varieties of speech, regardless of popularity. *See Pittsburgh Press*, 413 U.S. at 399 (Douglas, J., dissenting).

738

While the privileges accorded free speech can certainly be abused, the power to regulate speech is also subject to abuse, and therefore must be carefully circumscribed.

*Reversed.*

All concurred.