**John DOE**

v.

**Jane DOE.**

Supreme Court of Tennessee,
at Nashville.

Nov. 2003 Session Heard at Jackson.

Feb. 19, 2004.

John Edward Herbison, Nashville, Tennessee, for the Petitioner, John Doe.

Douglas M. Fisher, Nashville, Tennessee, for the Respondent, Jane Doe.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General; Steven A. Hart, Special Counsel, for the State of Tennessee.

Ronald D. Krelstein, Germantown, Tennessee, for the Amicus Curiae, Richard Roe.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

The petitioner, an attorney identified as John Doe, filed a petition for contempt alleging violations by the respondent, an attorney identified as Jane Doe, of the confidentiality requirement of Rule 9, section 25 of the Rules of the Tennessee Supreme Court. The Court directed the parties to address as a threshold matter the constitutionality of Rule 9, section 25. After considering the arguments of the parties, the Attorney General and amicus curiae, and analyzing the applicable law, we hold that section 25 of Rule 9 violates free speech protections of Article I, section 19 of the Tennessee Constitution and the First Amendment to the United States Constitution. We further conclude that sanctions for criminal contempt are not appropriate under the circumstances of this case. Accordingly, the petition for contempt is denied.

## BACKGROUND

On March 26, 2003, the respondent sent a letter to the Chief Disciplinary Counsel for the Tennessee Board of Professional Responsibility responding to allegations against her and accusing the petitioner of unethical conduct. The respondent sent copies of the letter to two other attorneys, a judge and a trial court clerk. On May 13, 2003, the petitioner filed in this Court a petition for criminal contempt sanctions alleging that the respondent's conduct in sending copies of the letter to persons not involved in the pending disciplinary matter violated the confidentiality requirement of Rule 9, section 25. The respondent admitted that she violated section 25 of Rule 9 by not maintaining confidentiality, but she claimed that her violation of the rule was not willful. In an amended response, the respondent also raised as a defense that Rule 9, section 25 violates her constitutional right of free speech.

Upon receipt of a petition for contempt arising from an alleged violation of section 25 of Rule 9, the Court ordinarily would appoint a special master to conduct an evidentiary hearing. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn.2003). In this case, however, we ordered the parties to brief as a threshold matter the constitutional issue. We requested the State of Tennessee, by and through Paul G. Summers, the Attorney General and Reporter, to file a brief and participate in oral argument. In addition, we granted leave for a person identified as Richard Roe to file an amicus curiae brief.

Roe is challenging the constitutionality of Rule 9, section 25 in a pending action in the United States District Court for the Western District of Tennessee. We recently answered questions certified by the federal district court in that case.[1] *See id.*

## DISCUSSION

The Attorney General asks the Court to uphold the constitutionality of Rule 9, section 25. The petitioner, the respondent, and the amicus curiae urge the Court to declare Rule 9, section 25 unconstitutional. The petitioner argues, however, that a determination of unconstitutionality will afford the respondent no defense to criminal contempt. We begin our analysis with an overview of the attorney disciplinary process in Tennessee.

### Attorney Disciplinary Process

█ As the Court of last resort in this state, we possess the inherent authority to regulate the ethical conduct of the legal profession in Tennessee. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 469. We exercise this authority through a disciplinary agency consisting of the Board of Professional Responsibility, Hearing Committees and Disciplinary Counsel. The procedures governing attorney disciplinary enforcement are set forth in Rule 9 of the Rules of the Tennessee Supreme Court.

When the Board receives a complaint against an attorney, Disciplinary Counsel makes an initial determination of whether further action is required. A complaint may be dismissed at this stage as frivolous or outside the Board's jurisdiction. Tenn. Sup.Ct. R. 9, § 7.2. Following an investigation of the complaint, Disciplinary Counsel may recommend dismissal, informal admonition, private reprimand, public censure or prosecution of formal charges. Tenn. Sup.Ct. R. 9, § 8.1. In addition, cases that otherwise would be disposed of by an informal admonition or a private reprimand are eligible for diversion to practice and professionalism enhancement programs under section 30 of Rule 9.

If the recommended disposition is dismissal or informal admonition, the matter is reviewed by a Hearing Committee member. Tenn. R. Sup.Ct. 9, § 8.1. If the recommended disposition is private reprimand, public censure or formal charges, the matter is reviewed by the Board. *Id.* A respondent-attorney may not appeal an informal admonition, private reprimand or public censure but may demand that a formal proceeding be instituted and that the matter be disposed of in the same manner as formal charges. *Id.*

If the Board determines that there is probable cause for the filing of formal charges, Disciplinary Counsel initiates prosecution of the case by filing with the Board a petition, a copy of which is served on the respondent-attorney. Tenn. Sup. Ct. R. 9, § 8.2. Formal hearings are conducted by a Hearing Panel consisting of three members of the Hearing Committee. Tenn. Sup.Ct. R. 9, § 6.4. The Hearing Panel's judgment may be dismissal, infor-

1. Specifically, we were asked to determine whether Roe, a layperson (i.e., a non-attorney), may be charged with contempt for disclosing that he filed a complaint with the Tennessee Board of Professional Responsibility against an attorney in violation of the confidentiality provision embodied in Rule 9, section 25, and if so, by whom and before what tribunal. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 468. We answered that the confidentiality requirement of Rule 9, section 25 applies to non-attorneys and attorneys alike and that contempt proceedings may be filed in the Tennessee Supreme Court by the attorney against whom the complaint has been filed, the complainant, the Board of Professional Responsibility, or this Court. *Id.* The constitutionality of Rule 9, section 25 was not among the questions certified by the federal district court.

mal admonition, private reprimand, public censure, suspension or disbarment. *See* Tenn. Sup.Ct. R. 9, § 4. Either party may appeal the decision of the Hearing Panel to the circuit or chancery court. Tenn. Sup. Ct. R. 9, § 8.3. If there is no appeal of a decision recommending disbarment or suspension in excess of three months, the judgment must be filed with the Supreme Court for review and is subject to modification by the Court. Tenn. Sup.Ct. R. 9, § 8.4.

### Confidentiality Requirement

■ The confidentiality provision applicable to attorney disciplinary proceedings is set forth in Rule 9, section 25, which provides:

> *All proceedings involving allegations of misconduct by or the disability of an attorney, including all information, records, minutes, files or other documents of the Board, Hearing Committee Members and Disciplinary Counsel are deemed to be non-public records. All such information, records, minutes, files or other documents shall be kept confidential and privileged until and unless:* (a) a recommendation for the imposition of public discipline is filed with the Supreme Court by the Board; or (b) the respondent-attorney requests that the matter be public; or (c) the investigation is predicated upon conviction of the respondent-attorney for a crime; or (d) in matters involving alleged disability, this Court enters an order transferring the respondent-attorney to disability inactive status pursuant to Section 21. In those disciplinary proceedings in which judicial review is sought pursuant to Section 1.3, the records and hearing in the Circuit or Chancery Court and in this Court shall be public to the same extent as other cases. *All participants in the proceeding shall conduct themselves so as to maintain the confidentiality of the proceeding.* This provision shall not be construed to deny access to relevant information to authorized agencies investigating the qualifications of judicial candidates, or to other jurisdictions investigating qualifications for admission to practice; or to law enforcement agencies investigating qualifications for government employment; or to prevent the Board from reporting evidence of a crime by an attorney or other person to courts or law enforcement agencies; or to prevent the Board or Disciplinary Counsel from defending any action or proceeding now pending or hereafter brought against either of them. In addition, the Board shall transmit notice of all public discipline imposed by the Supreme Court on an attorney or the transfer to inactive status due to disability of an attorney to the National Discipline Data Bank maintained by the American Bar Association.

(Emphasis added).

Section 25 states that attorney disciplinary proceedings are confidential until and unless a recommendation for the imposition of public discipline is filed with the Supreme Court by the Board. Public discipline means public censure, suspension or disbarment. The respondent-attorney may request, however, that the matter be public at any stage of the proceeding. Also, if either party appeals the judgment of the Hearing Committee to the circuit or chancery court, the proceedings are public to the same extent as other cases. Other exceptions to the confidentiality requirement include matters involving criminal convictions of the respondent-attorney and matters involving alleged disability in which the Court has entered an order transferring the respondent-attorney to disability inactive status.

For purposes of the confidentiality requirement of section 25, a proceeding generally commences upon the filing of a complaint with the Board.[2]  *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 472. Thus, section 25 prohibits a complainant from disclosing that he or she filed a complaint with the Board against an attorney. *Id.* As we observed in *Doe v. Bd. of Prof'l Responsibility,* "[t]he essence of the Rule mandates that until one of the enumerated events occur: (1) all proceedings surrounding allegations of misconduct by an attorney be 'kept confidential,' and (2) 'all participants in the proceeding shall conduct themselves so as to maintain the confidentiality of the proceeding.'" *Id.* The confidentiality requirement therefore extends to all aspects of the disciplinary process: complaint, investigation, hearing and judgment.  Unless one of the exceptions to confidentiality applies, section 25 prohibits a complainant from discussing any information related to the proceedings, including the Board's handling of the complaint.

## Standard for Determining Constitutionality

The free speech clause of the First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech."[3]  Similarly, Article I, section 19 of the Tennessee Constitution states in relevant part that "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."  Article 1, section 19 provides protection of free speech rights at least as broad as the First Amendment.

*Leech v. Am. Booksellers Ass'n, Inc.,* 582 S.W.2d 738, 745 (Tenn.1979).

The Attorney General does not dispute that Rule 9, section 25 restricts speech based on its content.  A determination of what speech is subject to the confidentiality requirement cannot be made without reference to the content of the speech.  Courts have found similar confidentiality provisions to be content-based restrictions.  *See Doe v. Supreme Court of Florida,* 734 F.Supp. 981, 985 (S.D.Fla. 1990); *Petition of Brooks,* 140 N.H. 813, 678 A.2d 140, 143 (1996).  Content-based restrictions are presumptively invalid, *R.A.V. v. City of St. Paul, Minnesota,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), and must be subjected to the most exacting scrutiny.  *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988).  Under the strict scrutiny standard, the State has the burden of proving (1) that the restriction is necessary to serve a compelling state interest and (2) that it is narrowly drawn to achieve that end.  *Burson v. Freeman,* 504 U.S. 191, 198, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

## Analysis of Constitutionality

We previously have recognized several purposes underlying the confidentiality requirement:

> Foremost, the rule serves to protect both the complainant from possible recriminations and the attorney from unsubstantiated charges while a thorough investigation is conducted.  Moreover, removing or unnecessarily qualifying the confidentiality requirement would eliminate many sources of information and

---

**2.** The Board may initiate investigation of a matter even when a complaint has not been filed.  *See* Tenn. Sup.Ct. R. 9, § 8.1.

**3.** The First Amendment applies to the states through the Fourteenth Amendment. *Bigelow v. Virginia,* 421 U.S. 809, 811, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

reduce complaints received by the Board from lay citizens, litigants, lawyers, and judges. Finally, the rule serves to protect public confidence in the judicial system by preventing disclosure of a charge until the directives of section 25 are satisfied.

*Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 472. These purposes are similar to the following interests identified by the Attorney General as compelling: (1) protection of the reputation of an attorney and the Bar from meritless complaints; (2) protection of the anonymity of complainants and other persons supplying information to the Board; and (3) maintenance of the integrity of pending investigations. The Attorney General asserts that each of these state interests provides more than sufficient basis to justify the restriction on speech by section 25 of Rule 9.

We address first the interest of protecting reputation. In *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), the United States Supreme Court struck down a Virginia confidentiality provision relative to judicial disciplinary proceedings. The Court rejected the argument that the confidentiality provision was justified by the purpose of protecting the reputation of judges and the judiciary:

> Moreover, neither the Commonwealth's interest in protecting the reputation of its judges, nor its interest in maintaining the institutional integrity of its courts is sufficient to justify the subsequent punishment of speech at issue here, even on the assumption that criminal sanctions do in fact enhance the guarantee of confidentiality. Admittedly, the Commonwealth has an interest in protecting the good repute of its judges, like that of all other public officials. Our prior cases have firmly established, however, that injury to official reputa-

tion is an insufficient reason "for repressing speech that would otherwise be free." The remaining interest sought to be protected, the institutional reputation of the courts, is entitled to no greater weight in the constitutional scales.

*Id.* at 841–42, 98 S.Ct. 1535 (citations omitted). Relying on *Landmark Communications*, the New Hampshire Supreme Court held that the state's interest in protecting the reputation of the State Bar and individual attorneys from frivolous complaints was insufficient to constitute a compelling state interest. *Petition of Brooks*, 678 A.2d at 144–45. Similarly, the United States District Court for the Southern District of Florida concluded that "[i]f maintaining the reputation of the judiciary as an abstract end is insufficient to justify encroaching upon the robust exercise of free speech, then maintaining the reputation of lawyers or the Bar is, in our view, equally insufficient." *Doe v. Supreme Court of Florida*, 734 F.Supp. at 986.

As the Attorney General notes, *Petition of Brooks* and *Doe v. Supreme Court of Florida* are the only two cases directly analyzing confidentiality provisions for attorney disciplinary proceedings. Both cases involve confidentiality provisions similar to section 25 of Rule 9. The Attorney General argues, however, that we should not follow these cases for several reasons.

First, the Attorney General asserts that *Doe v. Supreme Court of Florida* and *Landmark Communications*, on which *Doe* relies, are distinguishable from the present case because no evidence was presented supporting the claim that the confidentiality provision was necessary for the protection of reputation. In contrast, the Attorney General has submitted in this case two exhibits: (1) a state-wide survey regarding the effect on the public of information concerning attorney disciplinary

proceedings and (2) an affidavit of Chief Disciplinary Counsel of the Board of Professional Responsibility regarding the disposition of disciplinary complaints from 1976 to 2002. We conclude that this distinction is not significant. In *Landmark Communications,* the United States Supreme Court assumed for purposes of decision that the confidentiality provision served legitimate state interests. 435 U.S. at 841, 98 S.Ct. 1535. Likewise, in *Doe v. Supreme Court of Florida,* the federal district court concluded that, even if it were to accept the claim that the confidentiality provision was necessary, "protecting the reputation of an individual, or indeed the profession as a whole, would be insufficient justification for absolutely barring the dissemination of truthful information." 734 F.Supp. at 986. Therefore, the lack of empirical evidence was not a determinative factor in the analysis in either *Landmark Communications* or *Doe v. Supreme Court of Florida.*

Second, the Attorney General contends that *Landmark Communications* is distinguishable because the person seeking to publish the confidential information was a non-participant in the proceeding. The United State Supreme Court subsequently addressed the issue of punishing a participant in *Butterworth v. Smith,* 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990). In *Butterworth,* a reporter who had testified before a grand jury filed suit seeking a declaration that a Florida statute proscribing disclosure of his testimony was unconstitutional. The Court concluded that "Florida undoubtedly retains a substantial interest in seeing that 'persons who are accused but exonerated by the grand jury will not be held up to public ridicule'" and the ban in question serves that interest to some extent. *Id.* at 634, 110 S.Ct. 1376 (citation omitted). The Court, citing *Landmark Communications,* nevertheless held that "absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech." *Id.* Therefore, the analysis in *Landmark Communications* regarding the interest of protecting reputation applies to cases involving disclosure of confidential information by a participant in the proceeding.

Finally, the Attorney General suggests that the reasoning in *Petition of Brooks* is questionable because, in relying on *Landmark Communications,* the New Hampshire Supreme Court analogized attorneys to judges. The Attorney General contends that, unlike judges who are elected for eight-year terms, attorneys must be protected from public disclosure of frivolous complaints because their livelihood depends on their reputation. Although the court in *Petition of Brooks* recognized that attorneys are not public officials in the sense that judges are, it concluded that "the fundamental importance of the first amendment, combined with the role of attorneys as officers of the court, compels the application of similar principles of free expression to the reputational interests of attorneys, at least with respect to the issues in this case." 678 A.2d at 144–45. We note also that in *Butterworth* the United States Supreme Court applied the principles of *Landmark Communications* to the reputational interests of persons targeted by the grand jury without regard to whether they were public officials or private citizens. Therefore, contrary to the Attorney General's assertion, the reasoning in *Petition of Brooks* is sound.

Applying the principles of these cases, we conclude that to the extent a legitimate interest in reputation is at stake in requiring confidentiality under section 25 of Rule 9, such interest should not be recognized as compelling. Assuming *arguendo* that protection of reputation from frivolous complaints constitutes a compelling state

interest, a confidentiality provision precluding the disclosure of both frivolous and non-frivolous complaints is not sufficiently narrowly tailored to meet such interest. *See Doe v. Supreme Court of Florida,* 734 F.Supp. at 988; *Petition of Brooks,* 678 A.2d. at 145. Rule 9, section 25 requires confidentiality regarding a complaint even when the Board determines that there is probable cause for the filing of formal charges and the attorney-respondent receives an admonition or reprimand. Unless public discipline is imposed, the complainant is barred from publicly discussing not only the fact that a meritorious complaint was filed but also the Board's handling of the complaint. We agree with the following observation by the federal district court in *Doe v. Supreme Court of Florida:*

> The idea that the suppression of truthful criticism of lawyers would somehow enhance or protect the reputation of the Bar is not persuasive. To the contrary, continuing the prohibitory effect of the Rule after a grievance against an attorney is found to be meritorious is far more likely to engender suspicion than foster confidence.

734 F.Supp. at 988. Consequently, even if we were to assume that section 25 is necessary to serve a compelling state interest of protecting the reputation of an attorney and the Bar from meritless complaints, we cannot conclude that it is narrowly drawn to achieve that end.

We consider next the interest of protecting anonymity. The Attorney General contends that the State has a compelling interest in protecting the anonymity of complainants or participants who might not otherwise file valid complaints or provide information to the Board in the absence of the confidentiality provision. We recognized in *Doe v. Bd. of Prof'l Responsibility* that the rule serves to protect complainants from possible recrimination while a thorough investigation is conducted and that "removing or unnecessarily qualifying the confidentiality requirement would eliminate many sources of information and reduce complaints received by the Board from lay citizens, litigants, lawyers, and judges." 104 S.W.3d at 472. As the United States Supreme Court assumed in *Landmark Communications,* and as we stated in *Doe,* confidentiality serves a legitimate state interest in encouraging the filing of complaints and the willing participation of relevant witnesses. 435 U.S. at 835, 841, 98 S.Ct. 1535.

We cannot conclude, however, that this interest is sufficiently compelling to justify the infringement on free speech by section 25. The interest of promoting meritorious complaints and assistance in investigations could be advanced by permitting and encouraging confidentiality, not requiring it. *See Doe v. Supreme Court of Florida,* 734 F.Supp. at 985; *Petition of Brooks,* 678 A.2d at 145. Moreover, we note that, under section 13.1 of Rule 9, subpoenas may be issued to compel the appearance of witnesses to give evidence in matters under investigation and in formal proceedings before the Board. The additional effect on potential witnesses of the ban on disclosure is, in our view, marginal at best. *See Butterworth,* 494 U.S. at 634, 110 S.Ct. 1376.

Maintaining the integrity of pending investigations is the final state interest identified by the Attorney General as compelling. This interest overlaps somewhat with the second interest. The Attorney General claims that "any person who is aware of an investigation due to inquiries by Disciplinary Counsel could easily thwart the efforts of the investigation by simply bringing the matter to the attention of the public at a particularly delicate moment in the investigation" and that "[t]his

could easily cause hesitant potential witnesses to refuse to talk and essentially doom the investigation." As discussed above, because the testimony of hesitant potential witnesses may be compelled by subpoena, the guarantee of confidentiality has little additional effect.

To the extent that Disciplinary Counsel serves a function analogous to a grand jury, we agree with the Attorney General that confidentiality furthers a legitimate state interest in maintaining the integrity of pending investigations. We do not believe, however, that this interest—even if it were considered to be compelling—warrants a permanent ban on disclosure of information. *See Butterworth*, 494 U.S. at 632, 110 S.Ct. 1376 (holding that interests in preserving grand jury secrecy were not sufficient to sustain a Florida statute that prohibited a grand jury witness from disclosing his own testimony after the term of the grand jury had ended). Once the investigation has been completed and a probable cause determination has been made, even the most compelling state interest cannot justify a ban on public disclosure of allegations of misconduct. *See Kamasinski v. Judicial Review Council*, 44 F.3d 106, 112 (2d Cir.1994). Insofar as section 25 of Rule 9 prohibits disclosure of such information even after a determination of probable cause for the filing of formal charges, it is not sufficiently narrowly drawn to further the interest of maintaining the integrity of pending investigations.

We conclude that the three interests advanced by the Attorney General—protection of reputation of an attorney and the Bar from meritless complaints, protection of anonymity of complainants and other persons supplying information to the Board, and maintenance of the integrity of pending investigations—while legitimate, are not sufficiently compelling to justify the restriction on free speech by section 25, particularly considering the broad scope of its confidentiality requirement. Having determined that section 25 does not pass constitutional muster, we address as a final matter the propriety of contempt sanctions under the circumstances of this case.

## Sanctions for Contempt

The petitioner contends that a determination of unconstitutionality of Rule 9, section 25 affords the respondent, Jane Doe, no defense to criminal contempt. *See Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (upholding conviction for contempt for violation of injunction even though underlying ordinance raised substantial constitutional issues). The petitioner claims that the respondent should be held in contempt for violating an order of this Court. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 472 (stating that the confidentiality requirement of section 25 should be considered a standing order of this Court). The respondent argues that, in the interest of institutional dignity, the Court should not punish her for violating an unconstitutional rule.

Until the release of *Doe v. Bd. of Prof'l Responsibility* on May 8, 2003, forty-three days after the letters at issue in this case were sent, Jane Doe had no notice that Rule 9, section 25 should be considered a "standing order" of the Court. Furthermore, this case does not involve a separate order from the underlying rule. *Cf. Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). We conclude, therefore, that criminal sanctions are not appropriate under the circumstances of this case.

## CONCLUSION

The State has failed to meet its burden of proving that the confidentiality requirement of section 25 is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. Consequently, we conclude that section 25 violates free speech rights under Article I, section 19 of the Tennessee Constitution and the First Amendment to the United States Constitution. Because we further conclude that contempt sanctions are not appropriate under the circumstances of this case, the petition for contempt is denied. Filed contemporaneously with this opinion is an order publishing for public comment a proposed amendment to Rule 9, section 25 of the Rules of the Tennessee Supreme Court. The proposed amendment addresses the constitutional concerns discussed in this opinion. The Court solicits comments from all interested parties. The proposed amendment shall serve as the interim rule until formal adoption of an amended rule. Costs of the appeal are taxed to the petitioner, John Doe, for which execution may issue if necessary.